Citation Nr: 1829744 
Decision Date: 07/24/18 Archive Date: 08/02/18

DOCKET NO. 15-06 354 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manila, the Republic of the Philippines


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim for service connection for knee osteoarthritis.

2. Entitlement to service connection for a bilateral knee disorder.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

P. Olson, Counsel



INTRODUCTION

The Veteran had active military service from May 1968 to October 1991.

This matter comes before the Board of Veterans' Appeals (Board or BVA) on appeal from an April 2014 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Manila, the Philippines.

In February 2016, the Veteran testified before the undersigned at a Board hearing. A transcript of that hearing is of record. 

The issue of entitlement to service connection for chronic bilateral knee disorder is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. A claim for service connection for osteoarthritis of the knees was denied by rating decisions in May 2009 and June 2009 that were not appealed; and new and material evidence was not received within the year of the June 2009 decision.

2. Evidence received after the June 2009 rating decision is not cumulative or redundant of the evidence previously of record, and relates to an unestablished fact necessary to substantiate the claim, and raises a reasonable possibility of substantiating the claim.



CONCLUSIONS OF LAW

1. The May 2009 and June 2009 rating decisions which denied a claim for service connection for osteoarthritis of the knees are final. 38 U.S.C. § 7105(c) (2012); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2017).

2. New and material evidence has been received, and the claim of entitlement to service connection for osteoarthritis of the knees is reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. §§ 3.156 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran seeks to reopen a claim for service connection for a bilateral knee disorder. 

In decisions dated in May 2009 and June 2009, the RO denied the Veteran's claim for service connection osteoarthritis of the knees. As the Veteran did not appeal these decisions and new and material evidence was not received within a year thereof, they are final. See 38 U.S.C. § 7105 (2012); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2017). Thus, the 2009 decisions are final. 

The Veteran's application to reopen his claim of service connection for degenerative arthritis of both knees was received in October 2013. A claimant may reopen a finally adjudicated claim by submitting new and material evidence. New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a). 

The May 2009 and June 2009 rating decisions denied service connection for osteoarthritis of the knees on the basis that the condition was not incurred or caused by service. The RO noted that there was no evidence showing that the condition was diagnosed in service, within one year of discharge from service, and no evidence relating the condition to either active duty service or to a service-connected disability. Since those decisions became final, additional evidence has been received by VA, to include various medical records and personal hearing testimony from the Veteran. For purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed unless such evidence is inherently incredible or beyond competence of the witness. See Justus v. Principi, 3 Vet. App. 510, 513 (1992).

In October 2013, the Veteran submitted a medical report authored by Dr. J.D. This opinion was not associated with the file at the time of the 2009 rating decisions and it provides an opinion that the Veteran's bilateral knee problem started while he was in Navy. 

The evidence received after the May 2009 and June 2009 rating decisions is neither cumulative nor redundant and relates to unestablished facts necessary to substantiate the claim. Accordingly, the claim is reopened.


ORDER

New and material evidence having been received, the claim of entitlement to service connection for knee osteoarthritis is reopened. To this extent only, the appeal is granted.


REMAND

The service treatment records are absent complaints, findings or diagnoses of knee problems during service. Reports of Medical Examination in February1968 and March 1972 for enlistment and reenlistment into the Navy, respectively, indicate abnormalities which appear to be scars on both patellae (LS and CS left patella and CS right patella); however, the Veteran's lower extremities were evaluated as normal. On the Reports of Medical Examination in April 1988, and July 1991, the Veteran's lower extremities were evaluated as normal; and no knee disorders were noted under the summary of defects and diagnoses. On the Reports of Medical History in March 1987, April 1988, and July 1991, the Veteran denied ever having swollen or painful joints and "trick" or locked knee; and no knee disorders were noted under the physician's summary and elaboration of all pertinent data. 

The Veteran testified in February 2016, and clinical record confirms, that the Veteran first sought treatment for right knee pain without trauma in March 1993, however, this was approximately 15 months after his discharge from service at which time he reported knee pain and "locking" for several months. At that time, however, physical and radiologic examinations were normal. 

The record includes etiology opinions. In this case, however, the Board finds that these opinions are not adequate for adjudication purposes.

In a March 2009 medical opinion, a VA orthopedic physician determined that the knee osteophytic spur condition of both patellae was not caused by or a result of service-connected cervical spine osteophytic changes and that the degenerative osteophytic spur condition of patellae was most likely due to aging. The examiner noted that for the cervical spine to affect the knee, the lumbar spine and hips had to show abnormal, osteo degenerative changes first before the knees and noted that this was not the case. 

However, a VA examiner who conducted a spine examination in May 2014 found that the Veteran's lumbar spondylosis, diagnosed between 2006 and 2008, was proximately due to the Veteran's cervical spine condition. The examiner noted, "Principles of Biomechanics dictate that any chronic derangement in a weight-bearing joint (including the spine) will eventually affect the neighboring weight bearing joints above and below this index joint." In fact, the record indicates that the Veteran had been having chronic back pain in May 2004 and a diagnosis of spondylosis in February 2007. An April 2009 medical certificate authored by Dr. Reyes, Orthopedic Surgeon, notes that the Veteran had been seen regularly in his clinic since September 2008 with a complaint of pain in both knees, more on the left and that radiographic examination at that time showed signs of degenerative osteoarthritis (osteophyte formation and slight narrowing of the joint space). Thus, the evidence appears to indicate that the Veteran's lumbar spine exhibited degenerative changes prior to his knees. The Board notes that the Veteran has been awarded service connection for lumbar spondylosis.
 
The record also includes an October 2013 medical opinion authored by Dr. J. D. After physical examination, the surgeon diagnosed the Veteran as having degenerative arthritis in both knees as well as lumbar spondylosis, L2 to L5 with degenerative disc disease L5-S1. The physician stated:

In my humble opinion the patient's back and bilateral knee problem started while the patient was still in the service of the United States Navy. For 2 years the patient worked as storeroom supervisor which required a lot of lifting, bending and twisting resulting to low back and knee pain.

This opinion does not contain a rationale. Although Dr. J.D. noted that he reviewed the Veteran's history, his opinion does not appear to be based on a review of the record but solely on the Veteran's reports of in-service knee pain, which, by the Veteran's testimony in February 2016, was only very minor discomfort, and only twice, in 1978 and 1980, in the more than 20 years that the Veteran served in the Navy. Although Dr. J.D. notes that the lifting and moving cases and boxes weighing up to 45 pounds, tasks involving constant and rapid movements while training personnel to become damage control warfare specialists, and the physical fitness training every six months for 22 years which involved a 1.5 mile run, he does not discuss the Veteran's service treatment records which are absent any evidence of knee pain. He also does not discuss the Reports of Medical Examination which show that the Veteran's lower extremities were clinically evaluated as normal or the Reports of Medical History in which the Veteran consistently denied swollen or painful joints and "trick" or locked knees. 

In a November 2013 medical opinion, a VA physician opined that the Veteran's degenerative osteoarthritis of both knees was less likely as not service incurred. Although the November 2013 VA examination appears to have reviewed the file thoroughly, she does not provide an opinion regarding service connection on a secondary basis.

As such, the Board finds that an additional etiology opinion should be obtained as to whether his bilateral knee disorder is related to his active duty service or to service-connected disability.

In addition, the Veteran should be given an opportunity to identify any records relevant to the claims on appeal that have not been obtained. Thereafter, all identified records should be obtained. 

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be given an opportunity to identify any outstanding private or VA treatment records relevant to the claims on appeal. After obtaining any necessary authorization from the Veteran, all outstanding records, to include VA treatment records from the dated from November 2014 to the present, should be obtained.

For private treatment records, make at least two (2) attempts to obtain records from any identified sources. If any such records are unavailable, inform the Veteran and afford him an opportunity to submit any copies in his possession.

For federal records, all reasonable attempts should be made to obtain such records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).
 
2. After obtaining any outstanding records, return the claims file, to include a copy of this remand, to the November 2013 examiner for an addendum opinion. If the examiner who drafted the November 2013 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another examination is left to the discretion of the medical professional offering the addendum opinion. 

The examiner is asked to furnish an opinion with respect to the following questions: 

(a) Is it at least as likely as not (50 percent or greater probability) that the Veteran's bilateral knee disorder had its onset in service or is otherwise related in any way to the Veteran's active duty service? 

(b) Is it at least as likely as not (50 percent or greater probability) that the Veteran's bilateral knee disorder was caused by or aggravated by (permanently made worse) beyond its natural progression due to service-connected disability, specifically service-connected cervical spine disability (cervical osteophytic changes w/disc bulges) and/or the lumbar spine disability (lumbar spondylosis). If a service-connected disability aggravated the right and/or left knee, identify that aspect of disability which is due to such aggravation.

The clinician must reconcile any conflicting medical evidence, to include the two negative opinions by VA clinicians and the positive medical opinion by the private physician.

If aggravation is found, the physician should also state, to the extent possible, the baseline level of disability prior to aggravation. This may be ascertained by the medical evidence of record and also by the Veteran's statements as to the nature, severity, and frequency of his observable symptoms over time.

A fully articulated medical rationale for each opinion expressed must be set forth in the medical report. 

3. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claim should be readjudicated based on the entirety of the evidence. If the claim remains denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court 

of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).


______________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs